# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Submitted on Briefs May 30, 2002 Session

## IN RE: THE ADOPTION OF D.P.M.

**Appeal from the Chancery Court for Knox County**
**No. 143198-1     John F. Weaver, Chancellor**

---

**No. E2001-00958-COA-R3-CV     Filed July 3, 2002**

---

This case started with competing petitions for adoption filed by the maternal and paternal grandparents of D.P.M., who is six years old. After the Trial Court terminated the parental rights of both natural parents on the basis of abandonment, the adoption of D.P.M. was awarded to the maternal grandparents. The parties agreed the paternal grandparents would be granted visitation, and the Trial Court set forth the amount of visitation and the rights and restrictions of the paternal grandparents when exercising visitation. Notwithstanding the maternal grandparents' agreement to this visitation, they appeal the granting of visitation, as well as the rights granted to the paternal grandparents when exercising this visitation. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of
the Chancery Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Thomas F. Mabry, Oak Ridge, Tennessee, for the Appellants D.R.M. and P.E.M.

D. Vance Martin, Knoxville, Tennessee, for the Appellees B.S.J. and S.J.

Wayne D. Wycoff, Knoxville, Tennessee, as *Guardian Ad Litem.*

Paul G. Summers, Attorney General and Reporter, and Elizabeth C. Driver, Assistant Attorney General, Nashville, Tennessee, for the State of Tennessee.

## OPINION

## Background

D.R.M. and P.E.M. ("Petitioners") filed a petition in June of 1999 seeking to adopt their grandson, D.P.M. Petitioners are the maternal grandparents of D.P.M., and alleged in the petition that both of D.P.M.'s natural parents had abandoned their son. Petitioners asked the Trial Court to terminate the parental rights of D.D.L. ("Mother") and C.E.S. ("Father"), and grant their petition to adopt. Mother and Father originally opposed the petition. Mother filed a counter-petition asserting Petitioners, who shared joint custody of D.P.M. with Mother, had denied her visitation with her son in contravention of an earlier order entered in Fourth Circuit Court for Knox County. Mother later withdrew her counter-petition, consented to the termination of her parental rights, and expressed her willingness for Petitioners to adopt her son.

The paternal grandparents, B.S.J. and S.J., then filed a petition seeking to establish visitation rights with their grandson pursuant to Tenn. Code Ann. § 36-6-307. An Intervening Petition for Adoption was filed later by B.S.J. and S.J. ("Intervenors") seeking to adopt D.P.M. Father joined in this petition, acknowledging his willingness to terminate his parental rights and have his parents adopt D.P.M. Petitioners filed a motion to dismiss the intervening petition, which was denied by the Trial Court.

The Trial Court entered an Order after a three day hearing was held on the competing petitions for adoption. All interested parties testified except for Mother. The Trial Court terminated the parental rights of both Mother and Father after determining: (1) clear and convincing evidence existed that both parents had abandoned their son; and (2) it was in the best interest of D.P.M. "that the parental rights of both natural parents be terminated." Although the Trial Court concluded Petitioners should be the primary care-givers of D.P.M., it deferred ruling on Petitioners' request to adopt pending completion of a home study, if necessary, and the filing of other required pleadings. The Trial Court granted Intervenors visitation with D.P.M. and further concluded Father would not be prohibited from having contact with D.P.M. when Intervenors exercised visitation.

Intervenors then filed two petitions for contempt claiming Petitioners had refused their scheduled visitation as set forth in the previous Order entered by the Trial Court. After a hearing over approximately 4 days, the Trial Court entered a Final Judgment of Adoption and ruled on the petitions for contempt. As pertinent to this appeal, the Trial Court determined that:

> [I]t is in [the] best interests of the minor child sought to be adopted that the [Petitioners] be permitted to adopt the child; *that by agreement of the [Petitioners]*, and upon a finding by the Court that substantial harm would result if contact between [D.P.M.] and the [Intervenors] were denied, and further upon a finding that the best interest of the child demands ongoing contact with the [Intervenors], that the [Intervenors] should have Chancery Court Local Rule 13

visitation with the child . . . . [and] the Parental Bill of Rights should
apply for both the [Petitioners] and the [Intervenors].

The Trial Court also held Intervenors would not be allowed to leave D.P.M. alone with Father at any time when exercising their visitation.

Petitioners appeal various aspects of the Final Judgement of Adoption. Although Petitioners failed to comply with Tenn. R. App. P. 27 (a)(4) and have set forth no statement of the issues presented for review, based on our review of their brief, we discern the issues to be: (1) the Trial Court erred in denying Petitioner's Motion to Dismiss the Intervening Petition for adoption; (2) the Trial Court erred in permitting Father to be present when Intervenors exercise visitation in light of the fact that Father's parental rights were terminated; (3) the Trial Court erred in granting Intervenors visitation with D.P.M. as the Grandparent Visitation Statute, Tenn. Code Ann. § 36-6-306, does not apply since Father's parental rights were terminated; and (4) the Trial Court erred in granting Intervenors the rights of non-custodial parents contained in Tenn. Code Ann. § 36-6-110, sometimes referred to as the Parental Bill of Rights.

### Discussion

A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks,* 992 S.W.2d 403, 404 (Tenn. 1999). Review of questions of law is *de novo,* without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.,* 8 S.W.3d 625, 628 (Tenn. 1999).

The issue of whether or not the Trial Court erred in denying Petitioner's Motion to Dismiss the Intervening Petition for Adoption filed by Intervenors is moot. In that petition, Intervenors sought to adopt D.P.M. They were unsuccessful in this attempt as the adoption was granted to Petitioners. As such, even if it was error to deny the motion, the error was nullified when the intervening petition was denied and Petitioners were granted the adoption. This issue is without merit.

The main issue on appeal involves the granting of visitation rights to Intervenors. Petitioners argue the Trial Court erred when it granted visitation to Intervenors pursuant to the Grandparent Visitation Statute, Tenn. Code Ann. §§ 36-6-306 and 307, after Father's parental rights were terminated.

In pertinent part, Tenn. R. App. P. 36 (a) provides: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." It is clear from the Final Judgment that Petitioners agreed to Intervenors having visitation with D.P.M. Regardless of whether the Grandparent Visitation Statute is applicable, the parties were free to agree to visitation if they so desired - and they clearly did. If there was any error in granting the visitation,

Petitioners were responsible for the error and took no action to prevent or nullify any harmful effect from this alleged error. This issue is without merit. *See* Tenn. R. App. P. 36(a). We, therefore, need not and expressly decline to decide whether the Grandparent Visitation Statute has any application under the facts of this case.

Petitioners also attempt to attack the constitutionality of the Grandparent Visitation Statute. While our holding makes it unnecessary for this Court to decide whether the Grandparent Visitation Statute has any application under the facts of this case, we decline to address the merits of Petitioners' attack on the constitutionality of that statute for an additional reason as well. Although the exact basis for the constitutional challenge is far from clear, Petitioner's appear to claim application of this statute in the present case is "predicated upon legislation that is constitutionally questionable." This constitutional challenge never was presented to the Trial Court for consideration. The judgment appealed from in this case was entered on March 16, 2001. There is no mention of a constitutional issue in the record of the Trial Court until May 17, 2002. At that time, a motion to consider post-judgment facts was filed seeking only to supplement the record on appeal. There was a hearing in the Trial Court on this motion at which time the following exchange occurred between the Trial Court and counsel for Petitioners:

> THE COURT: It was done by agreed order. Are they [i.e., Petitioners] saying there really was no agreement and therefore we should open all this back up?

> MR. MABRY: No, Your Honor, they're not saying that. As I stated, the response to Your Honor's initial question, there was a case that came out that was decided by the Eastern Section following the entry of the agreed order with this Court, and the [Petitioners] had requested an appeal based upon the fact that grandparents' visitation may not be constitutional and may not be appropriate. And that's the gist of the argument in front of the Court of Appeals.

The Trial Court granted the motion and supplemented the record on appeal. At no time did Petitioners seek any ruling from the Trial Court on the claimed constitutional issue and none was ever made. We note the fact Petitioners agreed to visitation is made even clearer by this dialogue. The constitutional issue was never raised or considered at the Trial Court level. Merely pointing out to the Trial Court over a year after the judgment appealed from has been entered that the constitutional issue has been raised on appeal is altogether insufficient, contrary to Petitioners' assertion. We decline to consider this issue both because it was raised for the first time on appeal and because of our holding applying Tenn. R. App. P. 36(a). *See Heatherly v. Merrimack Mutual Fire Ins. Co.,* 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000)("As a general matter, appellate courts will decline to consider issues raised for the first time on appeal that were not raised and considered in the trial court.").

-4-

As noted above, the trial in this case lasted approximately four days. Petitioners have provided this Court with no transcript of these proceedings or statement of the evidence. *See* Tenn. R. App. P. 24 (b) and (c). Whether or not the Parental Bill of Rights has any application to the facts of this case is of no consequence so long as the Trial Court committed no reversible error when fashioning what it believed to be the appropriate amount and ground rules for the "agreed to" visitation. Since Petitioners agreed to allow Intervenors visitation, we believe the Trial Court was acting within its discretion to set forth the parameters of this "agreed to" visitation.

Petitioners also assert the Trial Court erred by allowing Father to visit D.P.M. when Intervenors exercise visitation. The Trial Court in no way granted Father any visitation. Instead, the Trial Court placed a restriction on Intervenors by prohibiting them from allowing Father to be alone with D.P.M. This is quite distinct from granting Father any visitation rights. Notwithstanding the fact that Father's parental rights were terminated on the basis of abandonment, Petitioners nevertheless agreed to Father's parents (i.e., Intervenors) having visitation. We have been provided no proof in the record to establish any substantial harm would come to D.P.M. if Father is allowed to be around him in the presence of Intervenors. Absent such proof, we cannot conclude the Trial Court committed reversible error on this issue.

Petitioners had the duty "to prepare a record which conveys a fair, accurate and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal." *Nickas v. Capadalis*, 954 S.W.2d 735, 742 (Tenn. Ct. App. 1997). In the absence of an adequate record on appeal, this Court will presume the Trial Court's rulings were supported by sufficient evidence. *See, e.g., State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). "This court cannot review the facts de novo without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings." *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992). In light of the foregoing, we find no reversible error in the Trial Court's judgment wherein it determined the rights and restrictions of Intervenors when exercising visitation expressly agreed to by Petitioners.

### Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellants, D.R.M. and P.E.M., and their surety.

_____
D. MICHAEL SWINEY, JUDGE