# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 24, 2004 Session

## JOANN MALLINAK GLASSELL v. RICHARD LEE GLASSELL

**Appeal from the Chancery Court for Knox County**
**No. 150397-3      Sharon Bell, Chancellor**
**FILED JUNE 10, 2004**

### No. E2003-01602-COA-R3-CV

Joann Mallinak Glassell ("Plaintiff") was represented by attorney James M. Crain ("Crain") throughout divorce proceedings she filed against Richard Lee Glassell ("Defendant"). After a trial, the Trial Court ordered the equity from the sale of the marital residence to be divided equally between the parties. The Trial Court then applied various off-sets to the amount awarded Plaintiff, thereby reducing the net amount of Plaintiff's recovery to $0.00. The Trial Court concluded that Crain's attorney's fee lien was lower in priority to the various off-sets. Crain appeals, claiming the Trial Court improperly subordinated his attorney's fee lien to the off-sets and that his lien should be given priority. We modify the judgment of the Trial Court and affirm as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery
Court Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., E.S., and BEN H. CANTRELL, SP. J., joined.

Appellant James M. Crain, Attorney, Knoxville, Tennessee.

Kimberly R. Taylor, Knoxville, Tennessee, for the Appellee Richard Lee Glassell.

### OPINION

### Background

This appeal involves the enforcement of an attorney's fee lien. The appellant is attorney James M. Crain, who represented Plaintiff in the underlying divorce litigation which began on March 20, 2001, when Plaintiff filed a complaint seeking a divorce from Defendant on various grounds. Crain represented Plaintiff when the complaint was filed and throughout the trial.

Defendant answered the complaint and filed a counterclaim seeking a divorce from Plaintiff on the same grounds as those alleged by Plaintiff. Both Plaintiff and Defendant sought to be the primary residential parent of their two minor children, who are 10 and 11 years old.

In June of 2001, upon agreement of the parties, the Trial Court entered an order appointing attorney Wayne Wykoff ("Wykoff") as guardian *ad litem* on behalf of the two children. The order instructed Wykoff to "make an appropriate investigation into the circumstances of the parties and the best interest of his wards" and to submit a report to the Trial Court once the investigation was completed. Plaintiff and Defendant also agreed to undergo psychological evaluations by Elsbeth Freeman, PhD, and an agreed Order was entered by the Trial Court to that effect. The parties agreed to split the costs of the psychological evaluations, "subject to reallocation by the Court at the trial of this cause."

In February of 2002, Defendant obtained an Order of Protection after proving allegations of domestic abuse. Defendant was awarded exclusive possession of the marital residence and Plaintiff was ordered to vacate the premises. The Order further provided that counsel for Defendant was to submit an affidavit of attorney's fees incurred in obtaining the Order of Protection and granted Defendant "reasonable attorney fees incurred in this cause."

The parties equity in the marital residence was $53,471.78. The marital residence was sold prior to trial with the equity proceeds being held in trust while resolution of the various issues were pending with the Trial Court. In October of 2002, the Trial Court permitted Plaintiff to withdraw $2,000 from her share of the equity proceeds in order for her to make payments on a car note and a line of credit, said payments totaling $528.31. The remaining $1,471.69 was paid to Plaintiff directly.

The divorce trial and various motions took approximately six days, beginning in August of 2002 and concluding in November of that same year. An extensive Final Judgment was entered by the Trial Court on December 9, 2002, and amended on May 22, 2003.[1] In the Final Judgment, as amended, the Trial Court concluded that the equity proceeds from the marital residence should be divided equally with Plaintiff and Defendant each receiving an award of $26,735.89. The Trial Court later stated that:

---

[1] This Court has not been provided a transcript from the divorce trial. However, none of the factual findings arising from the trial are directly at issue on appeal. We will discuss only those factual findings in the Final Judgment that are relevant to showing how and why the Trial Court distributed Plaintiff's equity in the marital residence in the manner in which it did. Because we do not have a transcript, we conclusively presume the Trial Court's factual determinations arising from testimony presented at trial are correct. "This court cannot review the facts de novo without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings." *In re Adoption of D.P.M.*, 90 S.W.3d 263, 267 (Tenn. Ct. App. 2002) (quoting *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App.1992)).

> The Court believes that the monies held in Trust constitutes (sic) a common fund created by and for the marital estate and believes that it can charge certain expenses on the estate.

Because Plaintiff already had received $2,000 from her share of the equity proceeds, her total award was reduced to $24,735.89. The Trial Court's order with regard to Plaintiff's remaining $24,735.89 forms the basis of this appeal.

After the parties separated, Defendant was the primary residential parent of the two minor children. One of the many issues at trial was the amount of Plaintiff's child support arrearage. The Trial Court found Plaintiff was gainfully employed from April through November of 2001, earning $40,248 in gross wages. Plaintiff also received $548 in unemployment compensation for the month of December, thereby resulting in total gross wages of $40,796 for 2001. From January through August of 2002, Plaintiff received unemployment compensation averaging $1,237.50 per month. Plaintiff paid no child support from April 2001 through August 2002.

In December of 2001, Plaintiff began receiving $1,366 per month in Social Security disability benefits. At that same time, each of the children began receiving monthly benefits of $321. All of the Social Security payments were sent directly to Plaintiff, including the combined monthly benefit of $642 for the children. Because Defendant was the primary residential parent, the Trial Court concluded Plaintiff should have given the $642 in monthly payments to Defendant for the children's use and benefit. From December of 2001 through August of 2002, Plaintiff received a total of $5,778 in benefits for the children, but gave Defendant only $1,600. Accordingly, the Trial Court concluded that Plaintiff owed Defendant $4,178 for the Social Security benefits earmarked for the children's benefit which Plaintiff retained for her own use. The Trial Court also found that Plaintiff owed Defendant reimbursement for health and dental insurance on the children and for one-half of the children's unpaid medical bills. All in all, the Trial Court concluded Plaintiff was in arrears a total of $19,584.69 for child support, social security payments improperly retained, reimbursement for health insurance, and one-half of the outstanding medical bills.

As previously noted, Defendant was awarded attorney's fees when he obtained the Order of Protection. The amount of attorney's fees Defendant was awarded was $1,533.44. In addition, Plaintiff apparently was late to court on several occasions and failed to cooperate in the discovery process to such an extent that sanctions were imposed. For example, Plaintiff failed to appear for depositions which resulted in Defendant's incurring additional attorney's fees. The amount of sanctions imposed by the Trial Court was $5,372.50. Thus, the combined amount Plaintiff owed Defendant for attorney fees resulting from the Order of Protection and discovery sanctions totaled $6,905.94. The Trial Court concluded these expenses should be paid to Defendant out of the remaining $24,735.89 from Plaintiff's share in the equity proceeds from the sale of the marital residence, thereby reducing Plaintiff's award to $17,829.95.

Although Plaintiff agreed to the appointment of Wykoff as guardian *ad litem* and to undergo a psychological examination with Dr. Elsbeth Freeman, Defendant paid most of the up-front

costs associated with these agreed upon events. In addition to paying his portion of these expenses, Defendant paid, on Plaintiff's behalf, a total of $2,002.50 toward the fee of the guardian *ad litem* and $1,950 toward the fee of Dr. Freeman. The outstanding balance Plaintiff owed Defendant based on his payment on her behalf of these agreed upon expenses was $3,952.50. The Trial Court deducted this amount from the $17,829.95 remaining in Plaintiff's share of the equity proceeds, leaving her a balance of $13,877.45.

Next, the Trial Court determined that Plaintiff's remaining $13,877.45 should be applied toward the $19,584.69 in child support arrearage, thereby lowering that arrearage to $5,707.24 and reducing Plaintiff's remaining share in the equity proceeds to $0.00. The Trial Court then stated:

> Each party's portion of the court costs as provided hereinafter in Paragraph 34 shall come out of that party's share of the monies held in Trust to the extent monies remain, and the court costs shall include the Guardian ad Litem fees as already provided herein with the clerk's costs having priority over the Guardian ad Litem's fees taxed as costs in the event of a shortfall. To the extent insufficient funds remain to cover that party's share of such court costs, that party shall still be responsible for the remainder owing. The amount owing to the Guardian ad Litem from … [Plaintiff is] $9,728.85[2].… The attorney's lien each attorney has against their respective clients comes last in the Order of priority.

After entry of the Final Judgment, Crain withdrew as Plaintiff's counsel, entered a special appearance, and filed a motion to amend the Final Judgment. In this motion, Crain asserted that he had a lien on all money or other assets awarded to his former client pursuant to Tenn. Code Ann. § 23-2-102. Crain claimed that because of this lien, he had a property right in Plaintiff's assets and the Trial Court lacked authority to adjudicate those rights in the manner in which it did. According to Crain, Plaintiff's financial obligations could be paid from her share of the equity "if, and only to the extent that, said sums exceed her liability to Attorney for his fees and expenses." Crain's lien claim is based solely on Tenn. Code Ann. § 23-2-102. No written agreement granting a lien on any of Plaintiff's property was entered into between Plaintiff and Crain. The Trial Court essentially denied Crain's motion, stating as follows:

> [The paragraphs in the Final Judgment regarding attorney liens] … pertain to attorney liens and priority of payments from the Trust Account and how the attorney liens fall within the priority of payment, [and] this Court Alters or Amends the Judgment to clarify

---

[2] The Knox County Juvenile Court exercised jurisdiction over custody of the children. Guardian *ad litem* fees were incurred in that proceeding as well. The $9,728.85 total reflects the guardian *ad litem* fees owed by Plaintiff from both proceedings.

this Court's ruling and finds that each attorney has a lien as to any money going into their respective client's possession. This Court finds that with respect to the funds which have been held in Trust, we are talking about other monies of the marital estate. This Court finds that James M. Crain was not a party and the issue of enforcement of his lien was not before this Court. Rather, this Court finds that what was before this Court was the issue of prioritizing payments/payment of claims to be made from the marital estate, specifically funds held in Trust. This Court finds that as to the priority of claims against the marital estate, the attorney's lien that each party has against their respective clients comes last in the Order of priority.

Crain appeals the denial of his motion to alter or amend the Final Judgment. Crain's issue on appeal is whether the Trial Court erred "in directing that monies awarded to Plaintiff in this action be devoted to payment of Plaintiff's obligations, free and clear of the lien of her attorney."

## Discussion

As explained in footnote one of this Opinion, the relevant facts are not in dispute on appeal. With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

First, we will address the Trial Court's conclusion that Crain "was not a party and the issue of enforcement of his lien was not before this Court." The Trial Court rendered this opinion on May 22, 2003, entered *nunc pro tunc* to March 7, 2003. Several months later, on October 30, 2003, our Supreme Court issued its decision in *Schmitt v. Smith*, 118 S.W.3d 348 (Tenn. 2003). In that case, Mrs. Schmitt obtained counsel and thereafter a complaint for divorce was filed on her behalf. Mrs. Schmitt subsequently retained new counsel. Mrs. Schmitt and her new attorney executed an employment agreement that granted her attorney a "lien as to all property, both real and personal, including money, assets, alimony or things of value, which were recovered, obtained, preserved or protected for Schmitt in this lawsuit or any lawsuit or claim." 118 S.W.3d at 350. The final decree ordered the parties to sell the marital residence and to pay their own attorney fees. After the marital residence was sold, Schmitt's attorney filed a petition to enforce the lien.[3] *Id*. One of the issues to be decided was whether the trial court had jurisdiction to enforce the lien or whether the attorney was required to file a separate lawsuit in order to have the lien enforced. In resolving this issue, the Court stated:

---

[3] Tenn. Code Ann. § 23-2-102 creates a statutory attorney's lien for attorneys who begin a lawsuit. Tenn. Code Ann. § 23-2-103 creates a statutory lien for an attorney who is hired after suit has already been brought. In *Schmitt* the Court observed that "the analysis under both of the statutes is the same." 113 S.W.3d at 351-52.

The lien in this case is a charging lien attached to the proceeds generated from the sale of the parties' marital home. "While a charging lien serves to secure an attorney's fees, it does not function as an adjudication of the rights between the lawyer and his or her client." *Starks*, 20 S.W.3d at 652 (citing *Pierce v. Lawrence*, 84 Tenn. 572, 1 S.W. 204, 205-06 (1886)). Thus, "[a] trial court may declare the existence of an attorney's lien in the suit out of which the dispute regarding the attorney's fee arose, but ordinarily an attorney, not being a party to the proceeding, may not obtain a judgment with respect to his or her fee in that action." *Id.* (citing *State v. Edgefield & Kentucky R.R.*, 63 Tenn. 92, 97 (1874); *Perkins v. Perkins*, 56 Tenn. (9 Heisk.) 95, 97-98 (1871)).

Although an attorney must generally commence a separate proceeding to enforce his or her contractual right to a fee, an exception has been carved out in which the trial court may exert jurisdiction where the money or property that is the subject of the lien "comes within the control of the court in the case in which the services were rendered." *Id.* at 653.…

We have here a divorce action in which the trial court adjudicated the distribution of the marital property owned by Schmitt and Smith. The residence that was the subject of McCrary's lien was included in the marital property ultimately divided by the trial court. As such, the property upon which the lien was to be enforced, the house, was within the control of the trial court.… Therefore, we hold that the trial court properly adjudicated the attorney's lien in this case.

* * * *

Finally, we note that it is in the interest of judicial economy to allow the same court to hear all matters regarding the property in question. Forcing the parties to proceed in a separate action with a judge unfamiliar with the underlying facts of the divorce action would cause both parties to incur additional attorney's fees, costs, and litigation expenses. Therefore, we hold that the trial court in this case had jurisdiction to adjudicate McCrary's attorney's lien.

*Schmitt*, 118 S.W.3d at 353-55 (footnote omitted).

When Crain's motion to alter or amend the final judgment was decided, the Trial Court did not have the benefit of the *Schmitt* opinion. Applying the holding of *Schmitt*, we conclude

-6-

that the Trial Court had jurisdiction to adjudicate issues surrounding the enforcement of Crain's attorney's fee lien and, in fact, did so.

The primary issue on appeal is whether the Trial Court erred when it subordinated Crain's lien to Plaintiff's financial obligations in the manner set forth above, thereby directing all of Plaintiff's share of the equity proceeds to be used in partial satisfaction of these obligations and, for all intents and purposes, leaving Plaintiff without any assets to satisfy Crain's lien.

Defendant argues the Trial Court correctly prioritized Crain's lien in light of the decision of our Supreme Court in *Roberts v. Mitchell*, 94 Tenn. 277, 29 S.W. 5 (1895). In that case, Mitchell was awarded a monetary judgment against Roberts. In a separate and independent lawsuit, Roberts was awarded a monetary judgment against Mitchell. Roberts then filed a motion to have the judgments off-set against each other. Mitchell's attorneys opposed the motion unless it was granted subject to their lien for attorney's fees. The issue on appeal was whether the judgments should be off-set against each other subject to the lien for attorney's fees. *Id.* at 277-78, 29 S.W. at 5.

The relevant statutory provision as it existed at that time was Tenn. Code Ann. § 25-105 which provided that "[j]udgments of the same court may be set off against each other on motion." After discussing how other jurisdictions have resolved this particular issue, our Supreme Court adopted the following rule:

> We think the better and more equitable rule is one that subordinates the right of set-off of independent judgments rendered in different suits, growing out of different causes of action, to the attorney's lien or claim for services rendered in the particular suit; and we do not hesitate to adopt it as the rule of practice in this State. On this subject, and in elaboration of our views, we quote the language of Chancellor Walworth in *Dunkins v. Vandenburgh*, 1 Paige Ch. 624:
>
>> "The question in all these cases is, What is equitable and just between the parties and the attorney or solicitor? Where different claims arise in the course of the same suit, or in relation to the same matter, it is undoubtedly equitable and just that these equities should be arranged between the parties without reference to the solicitor or attorney's lien. His lien is only on the clear balance due to his client after all these equities are settled. But where other claims, arising out of different transactions, and which could not have been legal or equitable set-off in that suit, exist between the parties, the Court ought not to

-7-

divest the lien of the attorney or solicitor which has already attached on the amount recovered for the costs of that particular litigation. When the solicitor has been at the labor and expense of prosecuting a suit, it is equitable and just that his costs should be paid out of that litigation."

Nor is … the Code to be construed so as to militate against this view. By that section it is provided that "judgments of the same Court may be set off against each other on motion." But we hold that this section must be read as if it contained the implied condition that this set-off will not be allowed in derogation of the attorney's lien for his services in prosecuting the suit and obtaining the particular judgment. We think this construction gives full force to this provision of the Code, and, at the same time, it preserves the equities of the parties interested.… In the case at bar an order will be entered allowing the set-off, but subject to the lien of the solicitors, which will be declared by a proper order.

*Roberts*, 94 Tenn. at 279-81, 29 S.W. at 5, 6.[4]

This Court had occasion to discuss the *Roberts* opinion in *Babcock v. Jones*, No. 73, 1987 Tenn. App. LEXIS 3070 (Tenn. Ct. App. Nov. 13, 1987). *Babcock* involved a landlord-tenant lawsuit wherein the trial court entered off-setting judgments. The defendant's attorney filed a motion for a new trial because no provision was made for his attorney's fee lien. *Babcock*, 1987 Tenn. App. LEXIS 3070, at * 1. The trial court overruled the motion and this Court affirmed that decision relying on the rule adopted in *Roberts*. We noted that Tenn. Code Ann. § 25-1-103 had no application to judgments rendered on claims which arose from the same transaction and which were ordered off-set. *Id*. at * 3. We noted that while *Roberts* was decided before the statute was amended to add the phrase "but not so as to defeat liens of attorneys…", its rationale applied with continuing force because the *Roberts* Court "implicated a condition … almost identical to the amendment which was added thirty seven years later." *Id*.

Applying the foregoing to the present case, we must determine whether the claims which were off-set by the Trial Court arose "in the course of the same suit, or in relation to the same matter" such that it would be "undoubtedly equitable and just that these equities should be arranged between the parties, without reference to the solicitor or attorney's lien." *Roberts*, 94 Tenn. at 280, 29 S.W. at 5. In so doing we must keep in mind that the "matter" at issue before the Trial Court

---

[4] The relevant statute was amended in 1932 to expressly include the provision regarding attorney's fee liens which the *Roberts* Court held was implied. With this amendment, the statute provided that "[j]udgments of the same court may be set off against each other on motion, but not so as to defeat liens of attorneys or to circumvent the exemption laws." The statute has remained unchanged since the 1932 amendment and is now codified at Tenn. Code Ann. § 25-1-103.

when it rendered its Final Judgment was the dissolution of the sixteen year marriage between the parties.

The first off-set by the Trial Court was for $1,533.44 in attorney's fees incurred by Defendant in successfully obtaining an Order of Protection which was issued based on Plaintiff's domestic abuse. The Petition for an Order of Protection was filed originally in the Fourth Circuit Court for Knox County on March 20, 2001, and an *Ex Parte* Order of Protection was issued by that Court the same day. March 20, 2001, also is when Plaintiff filed the complaint for divorce in the Trial Court. The order of protection was transferred to the Trial Court pursuant to Tenn. Code Ann. § 36-3-603 which provides as follows:

> **36-3-603. Duration of protection order – Petition for protection order in divorce action. –** (a) If an order of protection is ordered by a court and either the petitioner or respondent files a complaint for divorce, the order of protection shall remain in effect until the court in which the divorce action lies modifies or dissolves the order.
>
> (b) Nothing in this section shall prohibit a petitioner from requesting relief under this section in a divorce action.

In February of 2002, the Trial Court apparently reaffirmed the previous order after concluding that Defendant had proven domestic abuse by Plaintiff. In this new Order of Protection, Defendant was awarded attorney's fees. We believe the award of attorney's fees in the amount of $1,533.44 arose out of the same suit and is in relation to the same matter at issue before the Trial Court and, therefore, was properly off-set against Plaintiff's share of the equity proceeds from the sale of the marital residence. This rationale also holds true for the $5,372.50 in sanctions imposed against Plaintiff during the divorce litigation. Clearly, these sanctions arose out of and were part of the same suit wherein Plaintiff was awarded, at least initially, a judgment of $24,735.89.

Plaintiff affirmatively agreed to the appointment of Wykoff as guardian *ad litem* and to undergo a psychological examination by Dr. Elsbeth Freeman. Plaintiff's agreement was memorialized in the divorce action via entry of agreed orders by the Trial Court. Defendant advanced Plaintiff $3,952.50 towards these agreed upon expenses. It would defy reason to hold these expenses did not arise out of the same suit or were not in relation to the same matter at issue before the Trial Court. Accordingly, we conclude the Trial Court properly entered a judgment for Defendant for this amount and properly off-set that amount against Plaintiff's judgment for her share of the equity proceeds from the marital residence.

The final amount which was off-set from Plaintiff's $24,735.89 judgment was a portion of the child support arrearage. As noted above, the total arrearage was $19,584.69, which represented unpaid child support, social security funds improperly retained, unpaid medical expenses, etc. Unpaid child support is often at issue in divorce litigation when the parties have been living in separate residences, and was so at issue in this lawsuit. Again, we would be hard-pressed

to come up with a rationale for holding that these expenses did not arise out of the same lawsuit or were not related to the same matter at issue before the Trial Court. We instead hold that these expenses did arise out of this same suit and were related to the matter then at issue before the Trial Court and, therefore, were properly off-set against Plaintiff's share of the equity proceeds.

After applying the rule announced by our Supreme Court in *Roberts* and reaffirmed by this Court in *Babcock*, we conclude the Trial Court did not commit reversible error when it reduced Plaintiff's entire $24,735.89 judgment by the various off-sets awarded Defendant by giving those off-sets priority over Crain's attorney's fee lien. Crain's "lien is only on the clear balance due to his client after all these equities are settled." Here "the clear balance due" Plaintiff after the "equities are settled" is zero.

However, we note that all of the issues surrounding custody of the children were resolved by the Knox County Juvenile Court, which involved an independent proceeding and matters not directly at issue before the Trial Court herein. We, therefore, modify the Trial Court's Final Judgment to give Crain's lien for attorney's fees priority over any costs associated with the Juvenile Court litigation including, but not limited to, the guardian *ad litem* fees incurred in that proceeding. We acknowledge that our modification of the Trial Court's judgment will be of little comfort to Crain as the $24,735.89 which Crain claims is subject to his attorney lien is reduced to zero even with this modification of the Trial Court's judgment.

The Final Judgment of the Trial Court is affirmed as modified. In so doing, we emphasize that Plaintiff does not challenge the adequacy of the legal representation she received from Crain and our Judgment should in no way be read to suggest that Plaintiff is not indebted to Crain for the legal fees and expenses resulting from Crain's representing Plaintiff. In light of our holding, we pretermit Defendant's issue of whether the $24,735.89 actually represented a "recovery" of assets subject to an attorney's fee lien. We also pretermit the issue of whether the Trial Court properly considered the equity from the marital residence to be a "common fund" from which it could order payment of marital debts prior to enforcing an attorney's fee liens.

### Conclusion

The judgment of the Trial Court is affirmed as modified and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are assessed against the Appellant James M. Crain and his surety.

_____
D. MICHAEL SWINEY, JUDGE