IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 3, 2021 Session

## NATASHA S. ET AL. v. MADISON M.

**Appeal from the Circuit Court for Montgomery County**
**No. CC-2019-CV-675      William R. Goodman, III, Judge**

_____

### No. M2020-00668-COA-R3-CV

_____

Adoptive parents filed a petition to terminate their child's visitation with her biological grandmother on the grounds that the grandmother violated the terms of the agreed order setting visitation.  The trial court terminated the grandmother's visitation based upon its determination that continued visitation presented a risk of substantial harm to the child.  Because the trial court failed to analyze the case under the legal standards applicable to a modification of visitation, we vacate the order of the trial court and remand for the entry of an order with the necessary findings of fact and conclusions of law.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II,  and W. NEAL MCBRAYER, JJ., joined.

Irene Regina Haude, Nashville, Tennessee, for the appellant, Madison M.

Sharon T. Massey, Clarksville, Tennessee, for the appellees, Natasha S. and Jason S.

### OPINION

This case involves a petition to terminate grandparent visitation.  The minor child, Hannah S., was born in December 2009 to Ashley M.  The child's biological father is Hector N., who was convicted of two counts of statutory rape, one against the child's biological mother and one against another 14-year-old girl.  Hector N. was later convicted of especially aggravated exploitation of a minor and was sentenced to eight years in prison; he was released from incarceration in 2016 after serving six years.

Ashley M. and the child lived with Jason and Natasha S. ("Adoptive Parents") beginning in January 2014.  Adoptive Parents petitioned to adopt Hannah in June 2014,

and Ashley joined in the petition. Ashley died in October 2014. The child's maternal grandmother, Madison M. ("Grandmother") filed an intervening petition seeking custody of the child. In December 2014, Adoptive Parents and Grandmother entered into an agreed order "as a full and final settlement of all issues" in Grandmother's intervening petition. Pursuant to the agreed order, Grandmother had visitation with the child every other weekend, two weeks in the summer, and on certain holidays. The agreed order included the following conditions:

> Hannah is not to have any communication or contact with Hector [N.] or his family through action by [Grandmother] and she shall not arrange, facilitate or act as any conduit to allow Hannah and Mr. [N.] or any of his family members to speak or visit nor shall [Grandmother] encourage Hannah to seek out Mr. [N.] or his family. [Grandmother] is not to discuss with the child either Mr. [N.'s] relationship to the child or Mr. [N.'s] relationship to the child's mother.

In September 2016, the trial court terminated Hector N.'s parental rights and approved the adoption. Hector N. appealed the termination of his parental rights, and the trial court's decision was affirmed by this court in January 2018. *See In re Hannah C.*, No. M2016-02052-COA-R3-PT, 2018 WL 558522 (Tenn. Ct. App. Jan. 24, 2018). Thus, Adoptive Parents' adoption of Hannah became final.

In March 2019, Adoptive Parents filed a petition for the termination of Grandmother's visitation, contempt, and a restraining order. They alleged that Grandmother violated the terms of the agreed order by allowing contact between Hannah and Hector N. The trial court issued a temporary restraining order holding Grandmother's visitation in abeyance pending further orders of the court. In her answer, Grandmother admitted that Hector N. "was in [Grandmother's] home on two brief occasions, but [Grandmother] did not arrange or facilitate contact between him and Hannah." She admitted referring to Hector N. as "Uncle Henry" in order to protect Hannah from knowing his identity as the child's biological father. Grandmother also filed a counterclaim alleging that Adoptive Parents had violated the agreed order.

The parties engaged in discovery. Grandmother filed a motion to make the child available to her expert, and the trial court denied the motion. The final hearing took place over two days in January 2020. After the hearing, Grandmother filed a motion to dismiss for lack of subject matter jurisdiction or to stay modification pending dispute resolution. On February 12, 2020, the trial court entered a memorandum opinion stating findings of fact and conclusions of law. In its final order, entered in April 2020, the trial court discontinued Grandmother's scheduled visitation and ordered that any visitation "shall be at the discretion and direction" of Adoptive Parents. Further, the court dismissed all contempt petitions and denied any pending motions.

Grandmother appeals the trial court's decision and raises the following issues:

1. Whether this case should be dismissed rather than remanded.
2. Whether the trial court incorrectly applied the law and this court should make a de novo determination as to the applicable law.
3. Whether the agreed order is an enforceable contract and Adoptive Parents should be estopped from attacking the order.
4. Whether the agreed order is a valid post-adoption contact agreement under Tenn. Code Ann. § 36-1-145 and the trial court erred in failing to apply it.
5. Whether the trial court's failure to allow Grandmother's expert to see the child caused the court to resolve the case on a clearly erroneous assessment of the evidence.
6. Whether the trial court decided the case on a clearly erroneous assessment of the evidence.
7. Whether the trial court's comments and evidentiary rulings mandate recusal in the event of a remand.
8. Whether Grandmother is entitled to attorney fees on appeal.

STANDARD OF REVIEW

We review a trial court's findings of fact de novo upon the record, affording the trial court a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Manning v. Manning*, 474 S.W.3d 252, 256 (Tenn. Ct. App. 2015). On issues of law, including statutory construction, our review is de novo, with no presumption of correctness. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

ANALYSIS

I.      Modification of grandparent visitation.

We begin with Grandmother's argument that the trial court applied an incorrect legal standard.

In the relevant section of the trial court's memorandum opinion, the court stated: "In considering grandparent visitation in this case the Court looks to T.C.A. § 36-6-306, which in section (b)(1) provides, 'In considering a petition for grandparent visitation, the court shall first determine the presence of a danger of substantial harm to the child.'"[1] The trial court later reached the following conclusions:

---

[1] The trial court also stated: "In considering any claim for grandparent visitation it is recognized that in proceedings on grandparent visitation, there is a presumption that a fit parent is acting in the child's best interest and that a court is to accord special weight to the parent's determination."

> In consideration of the criminal history of Hector [N.], Mr. [N.'s] placement on the sex offender registry and the apparent place Mr. [N.] holds in the household or circle of acquaintances of [Grandmother], the Court finds such conditions and contact with [N.] to present a danger of substantial harm to the child. . . . The Court does not find there is sufficient evidence to establish either substantial harm or severe emotional harm would likely occur as a result of a cessation of visitation with the child by [Grandmother].

Based upon these conclusions, the trial court terminated Grandmother's visitation with Hannah.

The trial court's analysis shows that it treated this case as if it involved a grandparent's petition for visitation. This case does not, however, involve a petition for grandparent visitation. Rather, Adoptive Parents have requested the termination of the grandparent visitation ordered by the trial court in December 2014 during a contested adoption. Because this case involves the modification of grandparent visitation, and not an initial order of visitation, we follow the guidance of our Supreme Court in *Lovlace v. Copley*, 418 S.W.3d 1 (Tenn. 2013).

In *Lovlace*, the child's mother, Beth Copley, obtained a divorce from the child's biological father, and the mother's new husband, Timothy Copley, filed a petition to adopt the child. *Lovlace*, 418 S.W.3d at 8. The child's paternal grandparents, the Lovlaces, filed a petition for grandparent visitation in April 2006. *Id.* On the day of the hearing, the parties announced that they had reached an agreement, and the trial court entered an agreed order granting the Lovlaces grandparent visitation. *Id.* at 8-9. In March 2007, the Lovlaces filed a petition for contempt alleging that the Copleys had violated the agreed order. *Id.* at 9. In an amended petition filed in April 2009, the Lovlaces also requested modification of the agreed order to give them additional visitation. *Id.* at 10. The Copleys filed a counter-petition to terminate the Lovlaces' visitation. *Id.* (With the consent of the biological father, Mr. Copley adopted the child pursuant to an order entered in March 2009 in a different county. *Id.*) After a hearing on the parties' competing petitions in June 2010, the trial court found no basis for an increase or a termination of the Lovlaces' visitation. *Id.* at 12. The court did, however, modify the agreed order to specify the dates and times for regular visitation and "to take that discretion out of the mother and the adoptive father's hands." *Id.*

The Lovlaces' appeal to this court resulted in a decision including various concurring and dissenting opinions; the majority decision "vacated the trial court's order concerning all matters related to the Lovlaces' visitation with the minor child." *Id.* at 14 (citing *Lovlace v. Copley*, No. M2011-00170-COA-R3-CV, 2012 WL 368221, at *1 (Tenn. Ct. App. Feb. 3, 2012)). When the case reached our Supreme Court, the Court considered, for the first time, the appropriate standards to apply "where a grandparent and a parent seek to modify and terminate, respectively, court-ordered grandparent visitation." *Id.* at 22. The

Court noted that the grandparent visitation statute, Tenn. Code Ann. §§ 36-6-306–307, and related caselaw "addressed initial requests for visitation, not petitions to modify or terminate court-ordered grandparent visitation." *Id.* at 26-27.

To determine the standards applicable to modification of grandparent visitation, the *Lovlace* Court relied upon its decision in *Blair v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002), a case involving modification of grandparent custody. *Lovlace*, 418 S.W.3d at 27-28. In *Blair*, the Court "rejected the father's reliance on the superior parental rights doctrine," *id.* at 27, and held that, "[A] natural parent seeking to modify a custody order that grants custody to a non-parent must show that a material change in circumstances has occurred, which makes a change in custody in the child's best interests." *Blair*, 77 S.W.3d at 139. In *Lovlace*, the Court found "the analysis, reasoning, and conclusions of the *Blair* majority persuasive and equally applicable to proceedings to modify or terminate court-ordered grandparent visitation." *Lovlace*, 418 S.W.3d at 29. The *Lovlace* Court likewise stated that its "conclusion remains the same, even when . . . grandparent visitation rights derive from an agreed order." *Id.* Thus, the Court concluded:

> The burden of proof is upon the party seeking modification or termination to demonstrate, by a preponderance of the evidence, that a material change in circumstances has occurred which makes the requested modification or termination of grandparent visitation in the child's best interests. In determining the best interests of the child, courts shall consider the factors enumerated in the Grandparent Visitation Statute.

*Id.* at 30.

In light of the foregoing analysis, we agree with Grandmother's argument that the trial court in the present case applied an erroneous legal standard by failing to determine whether there had been a material change in circumstances and whether modification of Grandmother's visitation was in the best interest of the child. Having reached this conclusion, we must determine the appropriate course of action in this appeal.

II.     Findings of fact and conclusions of law.

Adoptive Parents, who take the position that the trial court applied the proper legal standard, assert that the trial court made sufficient findings of fact and conclusions of law. Grandmother argues that, despite the trial court's application of an erroneous legal standard, this court should "soldier on" and conduct a de novo review to determine where the preponderance of the evidence lies.

In this case, the trial court did not make sufficient findings of fact and conclusions of law because it was proceeding under an erroneous legal standard. Instead of considering whether there had been a material change of circumstances and whether a modification of

visitation was in the best interest of the child, the trial court determined that further visitation presented "a danger of substantial harm to the child" and that a cessation of visitation was not likely to cause substantial harm to the child. We have previously outlined the available options in appeals where the trial court's factual findings are insufficient:

> When confronted with insufficient findings of fact, an appellate court is not without alternatives. One alternative is to vacate the decision and remand so that the trial court can make specific findings of fact and conclusions of law. [*Lovlace*, 418 S.W.3d] at 36. Another alternative is to conduct a de novo review of the record to determine where the preponderance of the evidence lies. *Id.* The appropriate alternative depends on the particular circumstances of the case, including the adequacy of the record, the fact-intensive nature of the case, and whether witness credibility determinations must be made. *See id.* (declining to conduct a de novo review because credibility determinations were necessary to resolve factual disputes); *Town of Middleton v. City of Bolivar,* No. W2011-01592-COA-R3-CV, 2012 WL 2865960, *26 (Tenn. Ct. App. July 13, 2012) (stating that independent review is appropriate when the case involves a legal issue or the court's decision is "readily ascertainable"); *see also State v. King,* 432 S.W.3d 316, 328 (Tenn. 2014) (considering the adequacy of the record, the fact-intensive nature of the case, and the ability to request supplementation of the record in determining whether to conduct a de novo review in the context of a criminal case).

*Burnett v. Burnett*, No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at *5 (Tenn. Ct. App. Aug. 31, 2015).

In the present case, we have determined that we cannot "soldier on." It is the province of the trial court to make findings of fact and conclusions of law concerning whether there has been a material change of circumstances and whether modification of visitation is in the best interest of the child. Although we might conclude that the trial court's factual findings support the conclusion that there was a material change of circumstances, the trial court's failure to address the best interest factors necessitates a remand. Thus, we remand for the trial court to make the determinations regarding material change of circumstances and the best interest of the child under the proper legal standards.

III.    Agreed order as enforceable contract.

Grandmother asserts that the agreed order is a valid contract and should be enforced. Adoptive Parents argue that, once the adoption occurred, Grandmother no longer had a legally enforceable right to visitation. For the reasons stated below, we conclude that the trial court properly relied upon the agreed order as the source of Grandmother's enforceable visitation rights.

The agreed order in the present case provides: "In the event of an adoption in the future, the [Grandmother] shall continue to exercise her visitation." Grandmother and Adoptive Parents reached the agreement incorporated into the agreed order during a contested adoption in which both Adoptive Parents and Grandmother were attempting to adopt the child. In asserting that Grandmother's visitation rights as set forth in the agreed order ended with the adoption, Adoptive Parents cite Tenn. Code Ann. § 36-1-121(f).

When the trial court entered the agreed order, Tenn. Code Ann. § 36-1-121(f) stated:

> The adoptive parents of a child shall not be required by any order of the adoption court to permit visitation by any other person, nor shall the order of the adoption court place any conditions on the adoption of the child by the adoptive parents. Any provision in an order of the court or in any written agreement or contract between the parent or guardian of the child and the adoptive parents requiring visitation or otherwise placing any conditions on the adoption shall be void and of no effect whatsoever; provided, that nothing under this part shall be construed to prohibit "open adoptions" where the adoptive parents permit, in their sole discretion, the parent or guardian of the child who surrendered the child or whose rights to the child were otherwise terminated, or the siblings or other persons related to the adopted child, to visit or otherwise continue or maintain a relationship with the adopted child; and provided further, that the permission or agreement to permit visitation or contact shall not, in any manner whatsoever, establish any enforceable rights in the parent or guardian, the siblings or other related persons.

As Adoptive Parents emphasize, adoptive parents acquire all the same parental rights and responsibilities "as if the adopted child had been born to the adoptive parent or parents." Tenn. Code Ann. § 36-1-121(a). Thus, under Tenn. Code Ann. § 36-1-121(f), adoptive parents "shall not be required by any order of the adoption court to permit visitation by any other person."[2]

The case before us does not involve adoptive parents being required by the court to allow visitation. Rather, Adoptive Parents agreed to give Grandmother visitation rights to settle a contested adoption. We find instructive the case of *In re Adoption of D.P.M.*, 90 S.W.3d 263, 264 (Tenn. Ct. App. 2002), which involved competing petitions for adoption by maternal and paternal grandparents. The trial court ordered that the maternal grandparents be permitted to adopt the child and that, "by agreement of the [maternal

---

[2] The relevant version of Tenn. Code Ann. § 36-1-121(f) also invalidated any agreements between the child's parents or guardians and the adoptive parents "requiring visitation or otherwise placing conditions on the adoption." This case does not involve such an agreement or an open adoption.

grandparents]" and pursuant to the court's findings,[3] the paternal grandparents would have visitation with the child. *Id.* at 265. On appeal, the maternal grandparents argued that, pursuant to Tenn. Code Ann. §§ 36-6-306–307,[4] the trial court erred in granting visitation to the paternal grandparents after the adoption. *Id.* at 266. In rejecting the maternal grandparents' argument, this court reasoned as follows:

> In pertinent part, Tenn. R. App. P. 36(a) provides: "Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." It is clear from the Final Judgment that [the maternal grandparents] agreed to [the paternal grandparents] having visitation with D.P.M. *Regardless of whether the Grandparent Visitation Statute is applicable, the parties were free to agree to visitation if they so desired-and they clearly did.* If there was any error in granting the visitation, [the maternal grandparents] were responsible for the error and took no action to prevent or nullify any harmful effect from this alleged error. This issue is without merit. *See* Tenn. R. App. P. 36(a). We, therefore, need not and expressly decline to decide whether the Grandparent Visitation Statute has any application under the facts of this case.

*Id.* (emphasis added). Applying the same reasoning, we conclude that Grandmother and Adoptive Parents freely entered into an agreement allowing Grandmother to have visitation after the Adoptive Parents' adoption of the child. Tennessee Code Annotated section 36-1-121(f) does not invalidate such an agreement, and the trial court properly relied upon the parties' agreement in recognizing the enforceability of Grandmother's visitation rights.[5]

---

[3] The trial court in *In re Adoption of D.P.M.* found that substantial harm would result to the child if the paternal grandparents did not have "ongoing contact" and that visitation was in the best interest of the child. *In re Adoption of D.P.M.*, 90 S.W.3d at 265.

[4] Tennessee Code Annotated section 36-6-306(d)(2) states: "If a person other than a relative or a stepparent adopts a child, any visitation rights granted *pursuant to this section* before the adoption of the child shall automatically end upon such adoption." (Emphasis added). Pursuant to Tenn. Code Ann. § 36-6-306(a), a trial court must consider a request for grandparent visitation rights, "when presented in a petition for grandparent visitation," under certain circumstances. We again note that, in the present case, Grandmother's visitation rights were established in the context of a contested adoption, not pursuant to the statute.

[5] Adoptive Parents' reliance upon *In re M.L.S.*, No. E2019-01794-COA-R9-CV, 2020 WL 6129179 (Tenn. Ct. App. Oct. 16, 2020), is misplaced. Our opinion in that case clarified that "the limited issue properly before us in this interlocutory appeal is whether the trial court erred in partially denying Grandparents' motion to dismiss on the basis that Aunt and Uncle may have acquired some enforceable visitation right by acquiescence." *In re M.L.S.*, 2020 WL 6129179, at *3. Because we have determined that the agreed order in the present case established enforceable visitation rights, we need not consider the collateral estoppel arguments raised by Grandmother.

IV.     Applicability of Tenn. Code Ann. § 36-1-145.

Grandmother further argues that the agreed order constitutes "a valid post adoption contact agreement under Tenn. Code Ann. § 36-1-145." We disagree.

When interpreting a statute, we consider the plain meaning of the words used: "'The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Friedmann v. Marshall Cnty.*, 471 S.W.3d 427, 433 (Tenn. Ct. App. 2015) (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)). The statute at issue, which took effect in March 2019 and was amended in March 2020, allows for contracts regarding post-adoption contact under certain circumstances and contains the following pertinent provisions:

> (a) A prospective adoptive parent or an adoptive parent and a biological parent; or a prospective adoptive parent or an adoptive parent, a biological parent, and a child who is fourteen (14) years of age or older who is being adopted or who has been adopted, may voluntarily enter into a written contract for post-adoption contact that permits continued contact between legal relatives and the child. Unless expressly designated as a moral agreement only and that the agreement is not intended to be legally enforceable, a written agreement executed in accordance with this section is a contract for post-adoption contact, and is enforceable pursuant to this section. A subject child fourteen (14) years of age or older is a necessary party to a contract for post-adoption contact and is deemed to have the capacity to enter into a contract for purposes of this section.
> . . . .
> (d) As used in this section, "parties" means the prospective adoptive parent or adoptive parent, the biological parent, and the child if the child is fourteen (14) years of age or older at the time of the contract, but excludes any third-party beneficiary to the contract.

By its terms, Tenn. Code Ann. § 36-1-145(a) governs contracts for post-adoption contact between "[a] prospective adoptive parent or an adoptive parent and a biological parent; or a prospective adoptive parent or an adoptive parent, a biological parent, and a child who is fourteen (14) years of age or older who is being adopted or who has been adopted." Similarly, subsection (d) defines "parties" to mean "the prospective adoptive parent or adoptive parent, the biological parent, and the child if the child is fourteen (14) years of age or older at the time of the contract, but excludes any third-party beneficiary to the

contract." Tenn. Code Ann. § 36-1-145(d). Contrary to Grandmother's assertion, the statute does not apply to agreements between adoptive parents and grandparents.[6]

V.      Denial of request for expert to interview child.

Grandmother argues that the trial court erred in denying her motion to make the child available to Grandmother's expert. In its order denying the motion, the trial court stated:

> The issue in this Case is not the psychological issues of the child, and it appears that the issues relate to the potential psychological condition of [Grandmother], and therefore, the Motion to Make the child available to an expert for [Grandmother] is denied.

Grandmother asserts that this ruling caused the court to "resolve the case on a clearly erroneous assessment of the evidence."

The motion at issue was a discovery motion—a motion to compel Adoptive Parents to allow Grandmother's expert to examine the child. A trial court's decision granting or denying a discovery request is reviewed under the abuse of discretion standard. *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 503-04 (Tenn. 2010); *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). Our Supreme Court has recently stated:

> "An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence."

*Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305 (Tenn. 2020) (quoting *Lee Med.*, 312 S.W.3d at 524 (citations omitted)).

In making her argument, Grandmother points to the trial court's comment in its memorandum opinion that her expert, Dr. David McMillan, had not interviewed the child. Further, Grandmother emphasizes Dr. McMillan's testimony that it would have been helpful for him to observe the interactions between Grandmother and the child. The fact that Dr. McMillan had not met with the child affected the weight the trial court accorded his opinions. Grandmother has not, however, pointed to any basis for finding an abuse of

---

[6] In light of this result, we need not consider Grandmother's argument that the statute should be given retroactive application.

discretion in the trial court's decision not to allow Dr. McMillan to examine the child. As the trial court stated in its order denying Grandmother's motion, the psychological wellbeing of the child was not at issue. Rather, the trial court was tasked with deciding whether Grandmother's behavior in allowing contact between the child and the biological father constituted a material change in circumstances and whether continued visitation was in the best interest of the child. It was the role of the trial court to assess the credibility of the witnesses, including Dr. McMillan and the child, and we give the trial court's determinations on credibility great deference. *See Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007).

We find no abuse of discretion in the trial court's discovery ruling.[7]

## VI.     Recusal.

Grandmother asserts that, in the event of a remand, the trial judge should be recused based upon certain comments and evidentiary rulings. The record shows, however, that Grandmother failed to file a motion or request recusal of the trial judge prior to this appeal.

A party seeking the recusal of a judge must raise the issue promptly after the relevant facts become known. *See Bean v. Bailey,* 280 S.W.3d 798, 803 (Tenn. 2009); *Davis v. Tenn. Dep't of Emp't Sec.,* 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999). Failure to object in a timely manner generally results in the waiver of a party's right to question the judge's impartiality. *Davis,* 23 S.W.3d at 313; *Kinard v. Kinard,* 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998); *see Dupuis v. Hand,* 814 S.W.2d 340, 342 (Tenn. 1991) ("An objection to a judge's competence cannot be made for the first time on appeal.").

We consider this issue waived.

## VII.     Attorney fees on appeal.

Grandmother requests an award of her attorney fees on appeal on the grounds that "the errors of the trial court were numerous and serious and that she was treated wrongfully."

---

[7] We further reject Grandmother's short argument that the trial court erred by deciding the case on a "clearly erroneous assessment of the evidence." She asserts that "the only proof of meaningful contact with the terminated biological father came from the child" and that the child's testimony was inconsistent. We disagree. Although there were inconsistencies among the various witnesses regarding the amount of contact that occurred between the child and the biological father, Grandmother's expert acknowledged that there had been sufficient contact to make an impression on the child and that Grandmother exercised poor judgment regarding the child's exposure to the biological father and in her failure to inform Adoptive Parents. As previously stated, it was the trial court's duty to assess the credibility of the child and the other witnesses.

The American Rule as to attorney fees establishes that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). Our Supreme Court has stated that the American Rule is "firmly established in this state." *Id*. The American Rule is based on the notion "that public policy is best served by litigants bearing their own legal fees regardless of the outcome of the case." *House v. Estate of Edmondson,* 245 S.W.3d 372, 377 (Tenn. 2008). Thus, pursuant to the American Rule, "a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American [R]ule applies . . . ." *Cracker Barrel Old Country Store, Inc. v. Epperson,* 284 S.W.3d 303, 308 (Tenn. 2009).

Grandmother fails to cite any contractual or statutory basis for an award of attorney fees in this appeal. We decline to award Grandmother her attorney fees for this appeal.

CONCLUSION

The judgment of the trial court is vacated and remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed one-half against Natasha and Jason S. and one-half against Madison M., and execution may issue if necessary.


_/s/ Andy D. Bennett_____
ANDY D. BENNETT, JUDGE